UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALPHA PAINTING & CONSTRUCTION COMPANY, INC., | 1:16-cv-05141-NLH-AMD |
| Plaintiff, | **OPINION** |
| v. | |
| DELAWARE RIVER PORT AUTHORITY OF THE COMMONWEALTH OF PENNSYLVANIA AND THE STATE OF NEW JERSEY, | |
| Defendant. | |

**APPEARANCES**:

PETER J. TORCICOLLO
JENNIFER A. HRADIL
KEVIN W. WEBER
KAITLYN E. STONE
GIBBONS, PC
ONE GATEWAY CENTER
NEWARK, NJ 07102-5310
     On behalf of Plaintiff

STEWART JOHN GREENLEAF
THOMAS J. ELLIOTT
ELLIOTT GREENLEAF PC
UNION MEETING CORPORATE CENTER V
925 HARVEST DRIVE
SUITE 300
BLUE BELL, PA 19422
     On behalf of Defendant

**HILLMAN, District Judge**

After a four-day bench trial, on September 23, 2016, this Court found that Defendant, Delaware River Port Authority, was arbitrary, capricious, and unreasonable when it awarded Corcon

Inc., and not Plaintiff, Alpha Painting & Construction Company, Inc., the Phase 2 contract to paint the Commodore Barry Bridge. The Court held that DRPA's determination to award Corcon the contract was irrational because it arbitrarily deemed Alpha to be a non-responsible bidder by violating its own procurement rules to recraft Corcon's bid into the lowest responsive and responsible bid.  On the day the bids were received and opened on June 16, 2016, Alpha was the lowest responsive, responsible bidder for Contract CB-31-2016, and Corcon was not.  The Court found that DRPA's arbitrary and capricious actions over the next two months flipped that result without any meaningful justification or rational process. (Docket No. 37 at 40.)  As a result, the Court enjoined DRPA from proceeding on the contract with Corcon, and directed DRPA to award the contract to Alpha, which the Court found to be the lowest responsive and responsible bidder in accordance with DRPA's procurement rules. (Id. at 42-43.)

DRPA appealed the Court's decision to the United States Court of Appeals for the Third Circuit.  On April 6, 2017, the Third Circuit issued its judgment affirming this Court's finding that DRPA acted arbitrarily and capriciously in its contract award process.  Alpha Painting & Construction Co. Inc. v. Delaware River Port Authority of Pennsylvania and New Jersey, 853 F.3d 671, 674 (3d Cir. 2017).  The Third Circuit reversed,

however, this Court's order directing that DRPA award the contract to Alpha.  Id.  The Third Circuit vacated that part of the decision and remanded the case "for the entry of a more limited injunction" to enable Alpha to be "restored to competition."  Id.

At this Court's direction, the parties submitted briefing and participated in oral argument on how the case should proceed consistent with the Third Circuit's mandate.[1]  The Court has thoroughly considered the parties' positions, the Third Circuit's Opinion, and the law governing the scope of a district court's jurisdiction following the entry of a mandate by the appeals court.  For the reasons that follow, the Court finds that a rebid on a new contract for Phase 2 of the Commodore Barry Bridge painting project is consistent with the Third Circuit's mandate, and is the only fair and equitable result, for the parties and the public.

---

[1] The mandate was docketed in this Court on April 28, 2017, and in accordance with Local Civil Rule 79.4, the Court entered an Order implementing the mandate on May 8, 2017.  According to a briefing schedule agreed to by the parties, the supplemental briefing concluded on June 20, 2017.  Argument was held on July 26, 2017, and the parties were afforded until August 2, 2017 to submit one final letter brief to the Court regarding the scope of the modified injunction.

# DISCUSSION

## A. Standard for Determining Scope of Mandate on Remand

The Third Circuit has set forth the standard that a district court must employ in determining the scope of a Third Circuit's remand mandate:

> It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.
>
> A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.
>
> "Where the reviewing court in its mandate prescribes that the court shall proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length." In the absence of specific directions, the question as to what further proceedings can be had consistent with the opinion of the appellate court must be determined from the nature of the case and the pertinent statutory provisions. The mandate and the opinion must be considered together in their entirety with particular reference to the issues considered. From the proposition that a trial court must adhere to the decision and mandate of an appellate court there follows the long-settled corollary that upon remand, it may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision. A trial court is thereby free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision. . . .
>
> "[U]pon a reversal and remand for further consistent proceedings, the case goes back to the trial court and there stands for a new determination of the issues presented as though they had not been determined before, pursuant to the principles of law enunciated in the appellate opinion, which must be taken as the law of the case."

Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949-50 (3d Cir. 1985) (internal citations omitted).

**B. Analysis**

**1. How should Alpha be "restored to competition"?**

The Third Circuit agreed with this Court's finding that DRPA arbitrarily and without any rational basis declared Alpha as "not responsible," and that DRPA treated Alpha and Corcon unequally because DRPA should have deemed Corcon to be "not responsible" for the same reason it rejected Alpha for being "not responsible." Alpha, 853 F.3d at 686. The Third Circuit further agreed with this Court that DRPA acted arbitrarily and without any permissible basis in DRPA guidelines when it adjusted Corcon's bid so that it would become the lowest bidder. Id. at 687. The Third Circuit also noted that neither Alpha nor Corcon could be deemed "not responsive" because that determination was not made as to either bidder within the guidelines' 10-day window, and because both bidders could have been deemed "not responsive" by failing to provide the required documentation. Id. at 685.

After making these findings, this Court determined that the proper remedy for DRPA's arbitrary and capricious conduct was to enjoin DRPA from awarding the contract to Corcon and direct DRPA to award the contract to Alpha. This Court

5

determined that there was no need to start the bidding process over because such a remedy would be adverse to the public good and unfair to Alpha. (Docket No. 37 at 42.) This Court further found that Alpha was fully capable and qualified to perform the work required under the contract, it was ready to mobilize immediately, and it was the lowest responsive and responsible bidder in accordance with DRPA's procurement rules. (Id.)

In reviewing this Court's decision to enjoin the DRPA from awarding the contract to Corcon and ordering DRPA to award the contract to Alpha, the Third Circuit restated the three factors a court should consider when an agency's decision has been found to lack any reasonable basis: (1) the practical considerations of efficient procurement of supplies for continuing government operations, (2) the public interest in avoiding excessive costs, and (3) the bidder's entitlement to fair treatment through adherence to statutes and regulations. Alpha, 853 F.3d at 688-89 (citing Sea-Land Serv., Inc. v. Brown, 600 F.2d 429, 434 (3d Cir. 1979)). The Third Circuit agreed with this Court's finding as to the first factor – that rebidding would not result in the efficient procurement of the bridge painting project, which at that point had been delayed by several months due to the litigation. Id. at 689. The Third Circuit also agreed with this Court's finding as to the third factor – that since Alpha did not receive fair treatment by DRPA failing to follow its

6

guidelines, Alpha would suffer irreparable harm if DRPA was not enjoined from proceeding.  Id.  The Third Circuit noted that the second factor was largely neutral because of the small gap between Alpha's and Corcon's bids.  Id.

Thus, the Third Circuit agreed with this Court that injunctive relief was a proper remedy, but the Third Circuit found that this Court went too far in directing DRPA to award the contract to Alpha.  The Third Circuit found that because DRPA failed to conduct any meaningful responsibility determination as to Alpha, it was uncertain what the responsibility inquiries would have revealed if DRPA had followed its procurement rules.  Id.  The Third Circuit concluded that even though this Court was presented with evidence that supported Alpha's capability to complete the project, it was an impermissible substitution of judgment to deem Alpha "responsible" and award it the contract.  Id.

In making that determination, the Third Circuit discussed a case raised by Alpha in the appeal: Ulstein Maritime Ltd. v. United States, 833 F.2d 1052 (1st Cir. 1987).  Id. at 690.  The Third Circuit noted that in Ulstein, the court concluded that "but for" the violations of the applicable guidelines, "'one of the other bidders'" would have received the award, but unlike in this case, the court did not award the contract to "'any specific plaintiff,'" and instead it ordered the Navy to

7

"'review the bids previously received and to award the contract to the next low, responsive and responsible bidder'" because it was "'possible,'" upon remand, that "'[the plaintiffs] may be rejected for defects in . . . responsibility, leading to the award of the contract to a higher bidder or to no bidder at all.'" Id. (quoting Ulstein, 833 F.2d at 1058). The Third Circuit found that Ulstein, "far from lending support for the directed award here," "'merely un[did] the illegal agency actions and instruct[ed] the agency to proceed with the procurement which [was] in progress.'" Id. (quoting Ulstein, 833 F.2d at 1058).

The Third Circuit concluded that Ulstein "counsels in favor of a more limited injunction, the goal of which, in the circumstances of this case, should be to undo the illegal action and return Alpha to competition." Id. (citing Delta Data Sys. Corp. v. Webster, 744 F.2d 197, 206–07 (D.C. Cir. 1984) ("[T]he main objective of our effort at framing a [bidding violation] remedy is to assure that the government obtains the most advantageous contracts by complying with the procedures. . . . Putting the disappointed bidder in the economic position it would have occupied but for the error is normally the best approach to this result."); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 514 (2013) (ordering agency to restore apparent-low-bidder to competition for contract and

requiring agency to "reevaluate [the] proposals"); <u>Beta Analytics Int'l, Inc. v. United States</u>, 75 Fed. Cl. 155, 159 (2007) ("A reevaluation restores to a victim of arbitrary and capricious procurement activity its substantial chance to receive the contract award.")). The Third Circuit concluded:

> DRPA arbitrarily removed Alpha from contention for the Phase 2 contract. Accordingly, Alpha should be restored to competition and DRPA should evaluate Alpha's bid and affirmatively determine, per its guidelines, whether Alpha, the lowest bidder, is a "responsible" contractor. We therefore will vacate the portion of the District Court's order directing DRPA to award CB-31-2016 to Alpha and remand to the District Court for it to fashion a more limited injunction consistent with this opinion.

<u>Id.</u>

Thus, the posture of the contract bid process as a result of the Third Circuit's decision is that Alpha is the lowest bidder with the determination of whether it was "responsible" still outstanding, while Corcon is the second lowest bidder with a suspect responsibility review. See id. at 685-86 (pointing out that Corcon failed to submit three years of EMF scores, and observing that DRPA guidelines mandate responsibility inquiries such as contacting references, performing public searches or news searches, and assessing certifications, and the record is devoid of any indication that these inquiries were done for Alpha or Corcon).

There are three paths available to proceed from here: (1) DRPA can perform responsibility assessments on Alpha and Corcon

9

and decide between only those two companies which will be awarded the Phase 2 contract; (2) DRPA can reevaluate the bids as if it were the day the all the bids were opened – that is, DRPA resets the clock back to June 16, 2016 at 2:30 p.m. when it accepted and opened the seven bids submitted for Contract No. CB-31-2016, and properly follow its procurement rules to evaluate the responsiveness and responsibility of all the bidders; or (3) DRPA cancels Contract No. CB-31-2016 and issues an Invitation for Bids for a new Phase 2 contract.

Which path to choose depends on how the Third Circuit's direction that Alpha be "returned to competition" is interpreted. DRPA and Alpha disagree on what the Third Circuit means by "restored to competition." DRPA argues that its reevaluation of the bids should be limited to Alpha and Corcon, with its responsibility assessment conducted on both Alpha and Corcon, and from there DRPA will determine which company is the lowest responsive and responsible bidder, which will be completed within 90 days of the parties submitting updated information. In contrast, Alpha argues that the contract should be a complete do-over, with the contract posted for a totally new rebidding process. Alpha also argues that even if the contract is not rebid, DRPA's evaluation should be limited to only responsive bidders, of which Corcon was not one.

DRPA counters that a rebid is improper because (1) Alpha

argued against a rebid when it filed its case against DRPA last year, (2) this Court found that a rebid did not serve the public interest, and (3) the Third Circuit affirmed that finding.

Alpha responds that the passage of time has changed the nature of the proper remedy to cure DRPA's arbitrary and capricious conduct, and points out that the original procurement process from the release of the specifications to the board's approval of the contract took just as long, or even shorter than, DRPA's proposed reevaluation process. Alpha further points out that the DRPA procurement manual permits the DRPA to reject all bids for a contract and begin the bidding process anew.

The Third Circuit specifically held that the proper remedy for DRPA's conduct is to "undo the illegal action and return Alpha to competition." Alpha, 853 F.3d at 690. Despite DRPA's view that it is only required to perform a more thorough responsibility assessments on Alpha and Corcon as a remedy for its "illegal action," the process to "undo" DRPA's illegal action cannot be to resume the current contract bid review process that was fatally flawed – and illegal - from the start. The Third Circuit offered several reasons why this Court's modified injunction should not follow DRPA's plan.

First, the Third Circuit's decision cannot be read to contemplate that Corcon would be considered for an award of the

11

contract under the previously administered process. The Third Circuit pointed out DRPA's eventual award of the contract to Corcon was illegal and irrational, and that DRPA had gone out of its way to award the contract to Corcon and not Alpha. Alpha, 853 F.3d at 687. Additionally, with regard to DRPA's unequal, more-favorable treatment afforded to Corcon, the Third Circuit observed that not only did DRPA treat Corcon better than Alpha, id. at 686, DRPA did not try to "explain away the suggestive timing" of Corcon's bid modification, which this Court found was merely a pretext to ensure that Corcon was awarded the contract, id. at 686-87. The Third Circuit further found DRPA's argument that its guidelines expressly permitted DRPA to reduce Corcon's bid to "border[] on the frivolous," and the "decision to modify Corcon's bid appeared out of thin air." Id. at 687. When the Third Circuit ultimately found that "DRPA's actions def[ied] reasonable explanation," that observation was specifically directed at DRPA's minimal consideration of Alpha's bid in contrast to DRPA's "out of its way" help to make Corcon's bid satisfy DRPA's responsive and responsibility factors. Id. Simply performing a more detailed safety analysis of Alpha will not "undo" the unilateral and illegal corrections to Corcon's bid, which DRPA appears to argue should stand. DRPA's insistence that the bid process now be limited to just Alpha and Corcon is just another, and the most recent, example of an

unexplained and continuing preference for Corcon which is inconsistent with the factual findings of this Court and the Third Circuit's Opinion as a whole. This Court is as perplexed by the position as much now as it was at the time of our original decision.

Second, even though DRPA argues that the Third Circuit rejected a rebid as a remedy (Docket No. 66 at 1), the Third Circuit did not explicitly make that finding. The Third Circuit affirmed this Court's decision that rebidding did not satisfy the first <u>Sea-Land</u> factor since rebidding, as of September 2016, was not efficient for continuing government operations. But, the consideration of first <u>Sea-Land</u> factor has changed with the passage of time. What constituted efficiency only a few weeks after DRPA awarded the contract to Corcon is very different from what is efficient a year later.

The Third Circuit did not state that a direction to rebid the contract would have been erroneous if this Court had so ordered that remedy in September 2016, and the Third Circuit did not state that rebidding would be improper on remand. DRPA rules expressly permit DRPA to declare a contract cancelled and create a new IFB, and the Third Circuit has explicitly directed DRPA to follow its own guidelines. Moreover, we find it disheartening that after the decision of two courts sharply criticizing its lack of transparency and procurement practices

13

that a public agency would not respond by voluntarily redoing the process those two courts found illegal in meaningful ways.

Third, the only way DRPA's illegal action can be undone is if Corcon's bid is considered as it was submitted, and not "recalculated" by DRPA. See Alpha, 853 F.3d at 687 ("The District Court correctly concluded that DRPA lacked the authority to modify Corcon's bid. On August 9, 2016, Alpha was still the lowest bidder."). In that posture, Corcon is not the lowest bidder, and it may only win the contract if Alpha is deemed – again – to be "not responsible." Far from un-doing DRPA's actions, it would accomplish the very same prohibited act that precipitated this action in the first place. That is not equity.

At this juncture, the only way to fully rectify the illegal actions of DRPA is to start from scratch with a new IFB for the Phase 2 contract. That course would permit DRPA to properly follow its procurement rules and provide a transparent and thorough bid review and award process. It would also ameliorate the effects of the year-long delay of the litigation process on labor and material costs, as well as other considerations, such as updated safety assessments for all bidders.

Moreover, no option other than rebidding the Phase 2 contract satisfies the Sea-Land factors. Starting over from the beginning will take as long as DRPA's proposal, it will ensure

that the winning bidder is the actual lowest bid offered by a responsible contractor, and it will help ensure that all bidders are treated fairly from the bid opening to the awarding of the contract.  In that way, consistent with the mandate, Alpha will be restored to competition without fear.  So too will Corcon which can, along with any other interested bidders, resubmit its bid and be treated equally under the existing procurement rules without favor.

Therefore, the Court will issue a modified injunction that directs DRPA to cancel the current Phase 2 contract and issue a new Invitation for Bids for a revised Phase 2 contract, which shall be, in all respects, in compliance with DRPA's procurement rules and the law.

### 2. May Alpha proceed on the claims this Court dismissed as moot?

In resolving Alpha's motion for a preliminary and permanent injunction, the Court dismissed as moot Counts II, III, and IV of Alpha's complaint, which alleged violations of Alpha's due process rights, New Jersey's Open Public Meetings Act, N.J.S.A. 10:4-6 to -21, and Pennsylvania's Sunshine Act, 65 Pa. Cons. Stat. 701 to 716. (Docket No. 40.)  In its Opinion, the Court noted that it would not opine on those claims because the facts that Alpha presented to prove such violations supported the Court's conclusion that DRPA acted arbitrarily and capriciously.

(Docket No. 47 at 42-43 n.34.)

DRPA argues that Alpha is barred from renewing these claims now that the case has been remanded because they were dismissed with prejudice and Alpha did not appeal that determination. Contrary to DRPA's representation, however, those claims were not dismissed with prejudice. Instead, the Court dismissed them as moot because of the remedy afforded to Alpha on it success on its claim that DRPA acted arbitrarily and capriciously. Now that the Third Circuit has reversed that determination and remanded the matter for further consideration, the claims are no longer moot. Moreover, when a district court dismisses a claim as "moot," that dismissal is jurisdictional - not a determination on the merits - and the dismissal therefore is considered "without prejudice." Korvettes, Inc. v. Brous, 617 F.2d 1021, 1024 (3d Cir. 1980) (explaining that "[t]he label 'with prejudice' attached to the dismissal of a claim signifies that the dismissal is an adjudication of the merits and hence a bar to further litigation of the claim," but where the district court dismisses the claim on a jurisdictional point - the mootness of the controversy – such a "dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim," and instead the dismissal is "without prejudice") (citing Fed. R. Civ. P. 41(b))(other citation omitted). Finally, "a district court's dismissal without prejudice is not

16

ordinarily a final order unless the applicable statute of limitations would not permit the re-filing of the claims." <u>Core Communications, Inc. v. Verizon Pennsylvania, Inc.</u>, 493 F.3d 333, 337 (3d Cir. 2007).

Accordingly, because the Court has regained jurisdiction over the action, and the dismissal of Counts II, III, and IV is not considered an adjudication on the merits, the Court will afford Alpha leave to file an amended complaint if it wishes to proceed with any viable claims it may have against DRPA.

## **CONCLUSION**

For the foregoing reasons, the Court's modified injunction to restore Alpha to competition in compliance with the Third Circuit mandate will direct DRPA to cancel the current Phase 2 contract and issue a new Invitation for Bids for a revised Phase 2 contract. Alpha shall have 30-days to file an amended complaint to reassert the claims that the Court previously dismissed as moot.

An appropriate Order will be entered.


Date: August 10, 2017                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

ordinarily a final order unless the applicable statute of limitations would not permit the re-filing of the claims." <u>Core Communications, Inc. v. Verizon Pennsylvania, Inc.</u>, 493 F.3d 333, 337 (3d Cir. 2007).

Accordingly, because the Court has regained jurisdiction over the action, and the dismissal of Counts II, III, and IV is not considered an adjudication on the merits, the Court will afford Alpha leave to file an amended complaint if it wishes to proceed with any viable claims it may have against DRPA.

## **CONCLUSION**

For the foregoing reasons, the Court's modified injunction to restore Alpha to competition in compliance with the Third Circuit mandate will direct DRPA to cancel the current Phase 2 contract and issue a new Invitation for Bids for a revised Phase 2 contract. Alpha shall have 30-days to file an amended complaint to reassert the claims that the Court previously dismissed as moot.

An appropriate Order will be entered.


Date: August 10, 2017                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.