## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ALPHA PAINTING & CONSTRUCTION
COMPANY, INC.,

        Plaintiff,

    v.

DELAWARE RIVER PORT AUTHORITY
OF THE COMMONWEALTH OF
PENNSYLVANIA AND THE STATE OF
NEW JERSEY,

        Defendant.

1:16-cv-05141-NLH-AMD

**OPINION**

---

**APPEARANCES**:

PETER J. TORCICOLLO
JENNIFER A. HRADIL
KEVIN W. WEBER
KAITLYN E. STONE
GIBBONS, PC
ONE GATEWAY CENTER
NEWARK, NJ 07102-5310
    On behalf of Plaintiff

STEWART JOHN GREENLEAF
THOMAS J. ELLIOTT
ELLIOTT GREENLEAF PC
UNION MEETING CORPORATE CENTER V
925 HARVEST DRIVE
SUITE 300
BLUE BELL, PA 19422
    On behalf of Defendant

**HILLMAN**, District Judge

    Presently before the Court is the motion of Defendant,

Delaware River Port Authority ("DRPA"), to dismiss the amended

complaint of Plaintiff, Alpha Painting & Construction Company,

Inc. ("Alpha"). For the reasons expressed below, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

The background facts and procedural history are well-known to the parties. Briefly recapped, after a four-day bench trial, on September 23, 2016, this Court found that officials of the DRPA acted in a manner that was arbitrary, capricious, and unreasonable when it awarded Corcon Inc. ("Corcon"), and not Alpha, Contract CB-31-2016, a $17 million contract to continue a restoration and painting project on the Commodore Barry Bridge (the "Contract").

The Court held that DRPA's determination to award Corcon the Contract was irrational because it arbitrarily deemed Alpha to be a non-responsible bidder after DRPA violated its own procurement rules to recraft Corcon's bid into the lowest responsive and responsible bid. On the day the bids were received and opened on June 16, 2016, Alpha was the lowest responsive, responsible bidder for the Contract and Corcon was not.

The Court found that DRPA's arbitrary and capricious actions over the next two months flipped that result without any meaningful justification or rational process. (Docket No. 37 at 40.) As a result, the Court enjoined DRPA from proceeding on the Contract with Corcon, and directed DRPA to award the

2

contract to Alpha, which the Court found to be the lowest responsive and responsible bidder in accordance with DRPA's procurement rules. (Id. at 42-43.)

DRPA appealed the Court's decision to the United States Court of Appeals for the Third Circuit. On April 6, 2017, the Third Circuit issued its judgment affirming this Court's finding that DRPA acted arbitrarily and capriciously in the contract award process. Alpha Painting & Construction Co. Inc. v. Delaware River Port Authority of Pennsylvania and New Jersey, 853 F.3d 671, 674 (3d Cir. 2017). The Third Circuit reversed, however, this Court's order directing that DRPA award the Contract to Alpha. Id. The Third Circuit vacated that part of the decision and remanded the case "for the entry of a more limited injunction" to enable Alpha to be "restored to competition." Id.

On remand, the Court Ordered a rebid on a new contract for the Commodore Barry Bridge painting project, finding that a rebid was consistent with the Third Circuit's mandate, and was the only fair and equitable result, for the parties and the public. (Docket No. 68 at 15.) The Court also permitted Alpha to file an amended complaint if it wished to proceed with any viable claims it might have against DRPA, rejecting DRPA's argument that Alpha was barred from renewing the claims the Court previously dismissed as moot. (Id. at 17.)

3

Within the time afforded by the Court, Alpha filed an amended complaint, asserting claims for violation of: state common law for DRPA's arbitrary and capricious actions (Count I),[1] Alpha's due process rights (Count II), New Jersey's Open Public Meetings Act (NJOPMA), N.J.S.A. 10:4-6 to -21 (Count III), Pennsylvania's Sunshine Act (PASA), 65 Pa. C.S.A. § 701 et seq. (Count IV), and Alpha's right to equal protection (Count V).[2] (Docket No. 70.)

DRPA has moved to dismiss Alpha's amended complaint. DRPA first reargues that this Court lacks jurisdiction over the amended complaint because Alpha abandoned those claims and did not appeal them. DRPA further argues that Alpha's claims lack merit and fail as a matter of law. DRPA also points out that during the pendency of its motion, DRPA conducted a rebid in compliance with this Court's directive, but Alpha did not submit a bid. DRPA contends that because Alpha did not participate in the process it sought, Alpha should not be permitted to pursue its claims as a matter of public policy.[3]

---

[1] Alpha prevailed on this claim at the end of the bench trial.

[2] Alpha's claim against DRPA for an equal protection violation was not included in its original complaint.

[3] After the briefing was completed on DRPA's motion, DRPA filed a letter on December 8, 2017 informing the Court that the contract was rebid and while Alpha attended the pre-bid meeting it did

4

Alpha counters DRPA's position that it cannot pursue its claims and argues that DRPA's motion ignores the procedural posture of this case and pretends the trial and injunction never happened.  Alpha argues that it has sufficiently pleaded its claims, including its property interest for its due process claim, and that its claims are entitled to substantive consideration in light of the record.  Alpha states that the resolution of its claims does not require any discovery or additional trial days, and it is prepared to promptly bring the appropriate motion for judgment in its favor.

## DISCUSSION

### A.    Subject Matter Jurisdiction

Because Alpha has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of its constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Alpha's state law claims pursuant to 28 U.S.C. § 1367.

### B.    Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court

---

not submit a bid.  (Docket No. 78.)  Alpha did not respond to DRPA's letter.

must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.

2009) ("_Iqbal_ . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before _Twombly_.").

Following the _Twombly/Iqbal_ standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. _Fowler_, 578 F.3d at 210 (citing _Iqbal_, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" _Id._ (quoting _Iqbal_, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. _Id._; see also _Phillips v. Cnty. of Allegheny_, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's _Twombly_ formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal

conclusions" in a complaint when deciding a motion to dismiss.

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

   **C.   Analysis**

   With regard to DRPA's argument that this Court lacks jurisdiction to consider Alpha's claims that had been dismissed as moot prior to DRPA's appeal, the Court squarely rejected that argument in the Opinion addressing the Third Circuit's remand

8

instructions, and permitted Alpha to file an amended complaint to assert "any viable claims it may have against DRPA."[4] (Docket No. 68 at 15-17.) There is no need to reconsider that decision.

The Court therefore must determine whether Alpha's amended complaint complies with Rule 8 and Twombly/Iqbal and may survive DRPA's motion to dismiss. Alpha claims that its due process rights, equal protection rights, and New Jersey's and Pennsylvania's "sunshine laws" were violated by DRPA.[5] Alpha is seeking as a remedy declaratory relief. It also seeks attorney's fees and costs. The Court will address these claims

---

[4] The Court explained that Alpha was permitted to file an amended complaint because the Court had regained jurisdiction over the action, and the dismissal of Counts II, III, and IV was not considered an adjudication on the merits. DRPA argues that the Court limited Alpha's amended complaint to the same claims as its original complaint. That is not the case. Even though the conclusion section in the Opinion stated, "Alpha shall have 30-days to file an amended complaint to reassert the claims the Court previously dismissed as moot," (Docket No. 68 at 17), the Court's intention in granting Alpha leave to file an amended complaint was what was specifically stated a few lines above: "[T]he Court will afford Alpha leave to file an amended complaint if it wishes to proceed with any viable claims it may have against DRPA" (Id.). The Order accompanying the Opinion contains the exact same sentence. (Docket No. 69.) The Court permitted Alpha to file an amended complaint to assert any claims it determined were viable against DRPA, including, but not limited to, the ones from its original complaint. In that same vein, because the Court permitted Alpha to file such an amended complaint, it cannot be found, as DRPA urges, that Alpha is estopped from doing so.

[5] As noted above, Alpha's first count for violations of its common law rights has been fully litigated, with Alpha prevailing on that claim.

in turn.

### 1. Count II – Procedural Due Process

DRPA first argues for the dismissal of Alpha's procedural due process claim because Alpha cannot seek money damages. Whether Alpha would be permitted to seek money damages is not before the Court. Alpha is not asking for relief in the form of monetary compensation, only declaratory relief, and attorney's fees and costs of suit permitted under 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Dismissal of Alpha's due process claim on this basis is without merit.

DRPA also argues that Alpha does not have a cognizable property interest because it was not awarded the contract. Alpha counters that it had a property interest by virtue of being the lowest, responsive and responsible bidder and was therefore harmed by DRPA arbitrary and capricious conduct. Alpha also objects to being placed in a Catch-22: DRPA should not be allowed to impair or deny Alpha a property interest through an unlawful, arbitrary process and then contend that Alpha lacks a sufficient property interest to maintain its action.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. It is well established that the Due Process

Clause contains both a procedural and substantive component. American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012). Procedural due process – violations of which Alpha claims here – and substantive due process are different, with procedural protections being much broader than substantive rights. See Steele v. Cicchi, 855 F.3d 494, 507 (3d Cir. 2017) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)) ("The liberty rights protected by procedural due process are broader than those protected by substantive due process; they may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or they may arise from an expectation or interest created by state laws or policies [i.e., 'state-created' liberty interests].").

To maintain a procedural due process claim, a plaintiff must show that: (1) the defendant deprived it of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures defendant made available to it did not provide due process of law. Id. (citing Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006)). To have a property interest,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the

constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'" Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)) (other citations omitted).

Alpha claims in its amended complaint that it had a legitimate interest in being awarded the bridge painting contract as the lowest responsive bidder, a property right created by DRPA through its bidding process as an instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey. Alpha further claims DRPA's procedures, from the flawed process of awarding the contract and its own noncompliance with its procurement manual's rules for appeals, failed to afford Alpha with due process of law. Alpha's claim adequately alleges a property interest impaired or harmed by DRPA's lack of due process. See Three Rivers Cablevision, Inc. v. City of Pittsburgh, 502 F. Supp. 1118, 1131 (W.D. 1980) (finding that the plaintiff's property "interest was the right

of the lowest responsible bidder in full compliance with the specifications to be awarded the contract once the city in fact decided to make an award. The due process to which one possessing the protected interest was entitled was the non-arbitrary exercise by the city of its discretion in making the award. And it follows that a deprivation of the substantive benefit (the protected property interest) without the process due is an actionable wrong"); Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007) (quoting United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31 (6th Cir. 1992) (per curiam)) (A "'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded."); Enertech Elec., Inc. v. Mahoning County Com'rs, 85 F.3d 257, 260 (6th Cir. 1996) (citing United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir. 1992)) (recognizing a protected property interest in a public contract award if the disappointed bidder can demonstrate (1) that the bidder was awarded the contract and then deprived of it, or (2) that state law granted the governmental entity limited discretion in awarding the contract, which the entity abused); L & H Sanitation, Inc. v. Lake City Sanitation, Inc., 585 F. Supp.

120, 126 (E.D. Ark. 1984) ("[A]n unsuccessful bidder in Arkansas, who is the lowest responsible bidder in full compliance with the bidding procedures, has a limited property interest in the expectation of being awarded the contract."); id. ("The unsuccessful bidder, like any bidder, is entitled to the non-arbitrary exercise by the city of its discretion in making the award."); Brodie v. Connecticut, 401 U.S. 371, 379 (1971) (explaining that an essential element of due process is "that an individual be given opportunity for a hearing before he is deprived of any significant interest"); Pan Bldg., Inc. v. Philadelphia Housing Authority, 1989 WL 8909, at *3–4 (E.D. Pa. 1989) (citing Northern Penna. Legal Services, Inc. v. County of Lackawanna, 513 F. Supp. 678, 682 (W.D. Pa. 1981) ("PHA violated Pan's due process rights by terminating the contract without providing for a hearing.").  Alpha may proceed with its procedural due process claim.

### 2.  Count V – Equal Protection

DRPA argues that Alpha cannot maintain its equal protection claim because it is a new count that was not in Alpha's original complaint, and Alpha was only permitted to reassert its original claims in its amended complaint.  As noted above, supra note 4, the Court did not limit Alpha's amended complaint in that way, and Alpha's equal protection claim is not dismissible on that basis.

14

DRPA also argues that the assertion of an equal protection claim at this stage of the case would prejudice DRPA, and it violates New Jersey's entire controversy doctrine and res judicata principles. "New Jersey's Entire Controversy Doctrine and traditional res judicata principles are blood relatives" that both embody the notion that "the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 885 (3d Cir. 1997) (citations omitted). One of the prerequisites to the application of res judicata is the existence of a prior judgment that is final, valid, and on the merits. Id.

Because a trial has already been conducted, and no more discovery is needed, the Court does not discern any prejudice to DRPA's assertion of an equal protection claim. While the Court's adjudication of Count 1 is certainly final allowing Plaintiff to add a claim at this stage to assert an additional theory of liability offends neither the entire controversy doctrine or principles of res judicata. Plaintiff asserts an equal protection claim in the same court and underlying case as its other theories and in no way seeks to upend or change previous rulings adjudicated on the merits. These principles

act as a shield to prevent unfair surprise and the re-litigation of settled matters. They should not act as a sword to unfairly crib the claims of a prevailing plaintiff.

Moreover, the gravamen of Alpha's equal protection claim – that DRPA favored Corcon over Alpha – was a central theme in Plaintiff's proofs at trial and DRPA's defenses. The Federal Rules of Procedure plainly allow for the amendment of pleadings to conform to the proofs in such cases, even so far as to allow amendment as late as after a final judgment. Fed. R. Civ. P. 15(b)(2). Alpha's equal protection claim will not be dismissed on this basis.

Finally, DRPA contends that Alpha's "class of one" equal protection claim fails as a matter of law because it was not treated differently from others who were similarly situated. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV). Where a plaintiff does not allege membership in a class or group, a plaintiff may assert a "class of one" theory – that is, the plaintiff has been intentionally treated differently from other similarly situated persons without a

rational basis.  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562,

564 (2000) (citations omitted).  To prove a "class of one" equal

protection claim, a plaintiff must show: (1) the defendant

treated it differently from others similarly situated, (2) the

defendant did so intentionally, and (3) there was no rational

basis for the difference in treatment.  <u>Hill v. Borough of

Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006).

Alpha claims that DRPA treated it differently from Corcon,

who was a similarly situated bidder, and DRPA intentionally did

so with no rational basis.  DRPA challenges the facts underlying

these claims and argues that it did not treat Alpha differently.

That argument, however, is not relevant to the instant motion to

dismiss.  As pleaded, Alpha has presented a viable claim for an

equal protection violation against DRPA, and it may proceed.

> **3.  Counts III and IV - New Jersey's Open Public
> Meetings Act, N.J.S.A. 10:4-6 to -21 and
> Pennsylvania's Sunshine Act, 65 Pa. C.S.A. § 701-
> 716.**

Alpha claims that DRPA violated New Jersey's and

Pennsylvania's "sunshine laws"[6] when, on August 17, 2016, DRPA

---

[6] Laws regarding open meetings are called "sunshine laws" because
the drafters wanted to compel public bodies to conduct the
public's business in the light of day.  <u>See</u> <u>Opderbeck v. Midland
Park Bd. of Educ.</u>, 120 A.3d 967 (N.J. Super. Ct. App. Div. 2015)
(explaining why the OPMA's unofficial moniker is "the Sunshine
Law"); <u>Judge v. Pocius</u>, 367 A.2d 788, 790 (Pa. Cmwlth. 1977)
(explaining that the Sunshine Act is the latest in a series of
legislative enactments designed to provide a comprehensive

decided in a private executive session without public comment to award the contract to Corcon. Alpha seeks to have the resolution awarding the contract to Corcon declared null, void, and of no effect. DRPA moves for the dismissal of these claims for several reasons: (1) the cited laws do not apply to DRPA, (2) Alpha has already received the relief sought by these claims, and (3) the statute of limitations has expired for both claims.

Addressing DRPA's third argument first, Alpha's sunshine law claims are not time-barred. Under the PASA and the NJOPMA, challenges to void actions taken by a public body at a meeting must be advanced within 30 and 45 days, respectively. 65 Pa. C.S.A. § 713; N.J.S.A. 10:4-15. Alpha asserted violations of the PASA and NJOPMA on August 23, 2016, which was within the prescribed timeframes. As restated above and discussed in the Court's prior Opinion, when the Court dismissed these claims as moot, such a determination was not an adjudication on the merits, and it did not restart the clock on the limitations period for those claims. Moreover, Fed. R. Civ. P. 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim

---

format governing public access to the meetings and hearings of public agencies).

or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading. Alpha's claims for violations of the PASA and the NJOPMA are therefore not out of time.

With regard to whether the PASA and NJOPMA apply to DRPA, it is important to consider that the State of New Jersey and the Commonwealth of Pennsylvania created the DRPA through an interstate compact. Bi-state entities created by compact are not subject to the unilateral control of any one of the states. By compacting together to form the DRPA, "New Jersey and Pennsylvania have each surrendered a portion of their sovereignty over certain Delaware River bridge operations in order to better serve the regional interest." International Union of Operating Engineers, Local 542 v. Delaware River Joint Toll Bridge Com'n, 311 F.3d 273, 276 (3d Cir. 2002). "Such a surrender of state sovereignty should be treated with great care, and the Supreme Court has stated that courts should not find a surrender unless it has been expressed in terms too plain to be mistaken." Id. (citation omitted). Thus, in order to find that the PASA and NJOPMA apply to DRPA, (1) the compact must contain express authorization that those statutes apply, or (2) the two states have both passed legislation that expressly applies to the bi-state entity. Id.; see also Martin v. Port Authority Transit Corp., 2010 WL 1257730, at *4 (D.N.J. 2010)

(explaining that in order for the DRPA compact to be amended through legislation, the New Jersey legislation must contain the express intent that it apply to the DRPA, and Pennsylvania must likewise provide its express intent to allow the legislation to govern the DRPA).

The Court recognizes that the purpose of these "sunshine laws" is to prevent, and remedy violations of, the very conduct Alpha alleges occurred, and indeed this Court has found to occur, in this case. See 65 Pa. C.S. § 702 ("The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decisionmaking of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society."); Burnett v. Gloucester County Bd. of Chosen Freeholders, 976 A.2d 444, 459–60 (N.J. Super. Ct. App. Div. 2009) (citing N.J.S.A. 10:4-7) ("The heart of the Act seeks to avoid secrecy in public affairs, which undermines the faith of the public in government. The public interest demands no less than the court's scrutiny of a citizen's challenge to the government's wrongful restraint on the public's participation in the work of the people.").

The state of the law as it exists today, however, suggests

that the PASA and NJOPMA are not applicable to DRPA.[7]  While the New Jersey legislature has expressed its intent that the NJOPMA apply to the DRPA,[8] no clear expression to extend the PASA to DRPA has been made by the Pennsylvania legislature.

The Court observes that "every state, the federal government, and the District of Columbia have some form of open meeting law," Trib Total Media, Inc. v. Highlands School Dist., 3 A.3d 695, 699 (Pa. Cmwlth. 2010) (citation omitted), and therefore a strong argument could be made that DRPA should not be exempt from complying with such laws.  Indeed, as noted, the New Jersey Legislature has, for its part, amended and supplemented the compact so that both states' sunshine laws are

---

[7] It would appear that DRPA acts – and is emboldened to act – under that assumption.  The history of this case and the findings made by this Court and the Third Circuit make clear DRPA's failure to abide by its self-professed "commitment to open and transparent meetings that mimic open meeting laws." (DRPA's moving brief, Docket No. 73-1 at 28.)

[8] See N.J.S.A. 32:3-4.7 ("The [DRPA] board shall adopt within six months of the effective date of this act, appropriate rules and regulations concerning proper notice to the public and the news media of its meetings and the right of the public and the news media to be present at its meetings.  The rules and regulations adopted pursuant to this section shall provide for the same notice and right of the public and news media to be present as well as any other rights and duties provided in the 'Open Public Meetings Act,' P.L. 1975, c. 231 (C.10:4-6 et seq.) and the 'Sunshine Act,' number 84 of the laws of Pennsylvania of 1986. To the extent these laws conflict, the Port Authority shall incorporate into the rules and regulations the provisions of that law which provides for the greatest rights to the public and the news media.").

applicable to DRPA.  See N.J.S.A. 32:3-4.7, supra, note 8.

Such laws are of course good policy and should apply broadly with only the narrowest of exceptions if the law's mandate as expressed by the legislature should be fulfilled. Moreover, there seems little reason to enforce such laws intrastate while at the same time exempt interstate compacts. And the facts of this case and the findings of this Court surely demonstrate the cost, delay and harm - and the justifiable suspicion of malfeasance -  that occurs when government acts in the dark.

However, bridging that gap - and the Pennsylvania Legislature's failure to apply the PASA to DRPA is a fairly gaping hole - is a legislative rather than a judicial function. For reasons known only to them, Pennsylvania's legislature has declined by inaction to extend the PASA to the operations of the DRPA, a declination that frustrates and, in effect, nullifies the New Jersey legislature's contrary determination.

Moreover, the threat to the public fisc and the potential to undermine trust in government arising from a lack of transparency in the operations of such an important regional agency is manifest.  The DRPA is, in essence, a taxing authority exercised through its power to collect tolls and it spends a considerable amount of money on public expenditures in the Philadelphia region.  The travelling public has a right to know

that such funds are spent fairly and wisely for the public good and not for the benefit of a favored few.

Nonetheless, despite the Court's own belief that the world would be a better place if DRPA were held accountable under the same sunshine laws virtually every other similar governing body in the country is, that decision is for another sovereign and branch of government. This Court sits to interpret law and not make it – a task under these circumstances entrusted to the political branches. Consequently, the Court must dismiss Alpha's claims against DRPA for violations of the PASA and NJOPMA.

**CONCLUSION**

For the foregoing reasons, DRPA's motion to dismiss will be denied as to Alpha's due process and equal protection claims and granted as to Alpha's claim under the PASA and NJOPMA.

An appropriate Order will be entered.


Date: __June 22, 2018____           ___s/ Noel L. Hillman___
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.