UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ALPHA PAINTING & CONSTRUCTION COMPANY, INC.,

    Plaintiff,

v.

DELAWARE RIVER PORT AUTHORITY OF THE COMMONWEALTH OF PENNSYLVANIA AND THE STATE OF NEW JERSEY,

    Defendant.

1:16-cv-05141-NLH-AMD

**OPINION**

---

**APPEARANCES**:

PETER J. TORCICOLLO
JENNIFER A. HRADIL
KEVIN W. WEBER
GIBBONS, PC
ONE GATEWAY CENTER
NEWARK, NJ 07102-5310

    *On behalf of Plaintiff*

STEWART JOHN GREENLEAF
THOMAS J. ELLIOTT
ELLIOTT GREENLEAF PC
UNION MEETING CORPORATE CENTER V
925 HARVEST DRIVE
SUITE 300
BLUE BELL, PA 19422

    *On behalf of Defendant*

**HILLMAN, District Judge**

    Presently before the Court is the motion of Plaintiff, Alpha Painting & Construction Company, Inc. ("Alpha"), for

summary judgment in its favor on its due process and equal protection violation claims against Defendant, Delaware River Port Authority ("DRPA"). For the reasons expressed below, Plaintiff's motion will be granted.

**BACKGROUND**

For a full recitation of the facts of this case, the Court incorporates its 45-page Opinion filed on September 23, 2016 (Docket No. 37), which was issued after a four-day bench trial. This Court found that officials of the DRPA acted in a manner that was arbitrary, capricious, and unreasonable when it awarded Corcon Inc. ("Corcon"), and not Alpha, Contract CB-31-2016, a $17 million contract to continue a restoration and painting project on the Commodore Barry Bridge (the "Contract"). The Court held that DRPA's determination to award Corcon the Contract was irrational because it arbitrarily deemed Alpha to be a non-responsible bidder after DRPA violated its own procurement rules to recraft Corcon's bid into the lowest responsive and responsible bid. The Court enjoined DRPA from proceeding on the Contract with Corcon, and directed DRPA to award the contract to Alpha, which the Court found to be the lowest responsive and responsible bidder in accordance with DRPA's procurement rules. (Id. at 42-43.)

DRPA appealed the Court's decision to the United States Court of Appeals for the Third Circuit, which affirmed this

Court's finding that DRPA acted arbitrarily and capriciously in the contract award process. The Third Circuit reversed the order directing that DRPA award the Contract to Alpha, and remanded the case for the entry of a more limited injunction to enable Alpha to be restored to competition. See Alpha Painting & Construction Co. Inc. v. Delaware River Port Authority of Pennsylvania and New Jersey, 853 F.3d 671, 674 (3d Cir. 2017).

On remand, the Court Ordered a rebid on a new contract for the Commodore Barry Bridge painting project. (Docket No. 68.) The Court also permitted Alpha to file an amended complaint, which it did. (Docket No. 70.) DRPA moved to dismiss Alpha's amended complaint, and the Court granted DRPA's motion as to Alpha's claims under New Jersey's and Pennsylvania's sunshine laws, but denied it as to Alpha's claims for violations of its due process and equal protection rights, as well as for its common law claim regarding DRPA's arbitrary and capricious actions on which the Court has already ruled in Alpha's favor. (Docket No. 79.)

Because there has been a trial on the merits of Alpha's claims, the Court has made findings of fact and conclusions of law, and the Court has awarded Alpha injunctive relief for its common law claim against DRPA, Alpha has moved for summary judgment on its remaining two claims based on the existing record. DRPA has opposed Alpha's motion.

**DISCUSSION**

**A.   Subject Matter Jurisdiction**

Because Alpha has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of its constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Alpha's state law claims pursuant to 28 U.S.C. § 1367.

**B.   Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

**C.   Analysis**

For its due process and equal protection violation claims, Alpha is seeking a determination as to liability, as the Court already provided the requested remedy of injunctive relief for Alpha's common law arbitrary and capricious claim against DRPA. Alpha also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988.  The factual record is complete as a result of the Court's trial on the merits, which was consolidated with the

hearing on Alpha's preliminary injunction motion pursuant to Fed. R. Civ. P. 65(a)(2). (See Docket No. 37 at 8.) The Court applies its findings of fact and conclusions of law to the assessment of Alpha's due process and equal protection violation claims.[1]

### 1. Count II – Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. It is well established that the Due Process Clause

---

[1] In opposition to Alpha's motion, DRPA makes several arguments as to why Alpha cannot maintain its due process and equal protection violation claims as a procedural matter rather than on a substantive basis, and has filed a motion for leave to submit supplemental authority to support its arguments. The Court has squarely addressed – and rejected - these arguments in its two prior Opinions. (Docket No. 68 at 15-17; Docket No. 70 at 8-9.) The Third Circuit has also summarily denied DRPA's petition for writ of mandamus on those arguments. (In re: Delaware River Port Authority, 18-2517 (3d Cir.), September 21, 2018.) The purported supplemental authority is unpersuasive as it is inapposite to the procedural history in this case. Thus, the Court will not rehash those issues again here, and will deny the motions relative to the supplemental authority. (Docket No. 89, 91.) Relatedly, DRPA raises events that occurred after the July 28, 2016 rejection of Alpha's bid and the August 17, 2016 award of the Contract to Corcon to support its opposition to Alpha's summary judgment motion. The Court will not address these arguments as they have no relevance as to what occurred between the submission of Alpha's bid and its ultimate rejection. The Court instead focuses its Opinion on the substantive sufficiency of Alpha's claims as they relate to the May 17, 2016 through August 17, 2016 contract bid and award process.

5

contains both a procedural and substantive component. <u>American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff</u>, 669 F.3d 359, 366 (3d Cir. 2012). Procedural due process – violations of which Alpha claims here – and substantive due process are different, with procedural protections being much broader than substantive rights. <u>See</u> <u>Steele v. Cicchi</u>, 855 F.3d 494, 507 (3d Cir. 2017) (quoting <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005)) ("The liberty rights protected by procedural due process are broader than those protected by substantive due process; they may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or they may arise from an expectation or interest created by state laws or policies [i.e., 'state-created' liberty interests].").

To maintain a procedural due process claim, a plaintiff must show that: (1) the defendant deprived it of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures defendant made available to it did not provide due process of law. <u>Id.</u> (citing <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233-34 (3d Cir. 2006)). To have a property interest,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the

6

> constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'" Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)) (other citations omitted).

DRPA argues that Alpha does not have a cognizable property interest because it was not awarded the contract. Alpha counters that it had a property interest by virtue of being the lowest, responsive and responsible bidder and was therefore harmed by DRPA arbitrary and capricious conduct. Alpha also objects to being placed in a Catch-22: DRPA should not be allowed to impair or deny Alpha a property interest through an unlawful, arbitrary process and then contend that Alpha lacks a sufficient property interest to maintain its action.

The Court finds that Alpha – as did every other bidder – had a non-abstract, legitimate entitlement to have its bid assessed according to the process created by DRPA as an instrumentality of the Commonwealth of Pennsylvania and the

State of New Jersey, and DRPA arbitrarily undermined Alpha's right to that process.[2] The Court refers to the entirety of its

---

[2] See, e.g., Three Rivers Cablevision, Inc. v. City of Pittsburgh, 502 F. Supp. 1118, 1131 (W.D. 1980) (finding that the plaintiff's property "interest was the right of the lowest responsible bidder in full compliance with the specifications to be awarded the contract once the city in fact decided to make an award. The due process to which one possessing the protected interest was entitled was the non-arbitrary exercise by the city of its discretion in making the award. And it follows that a deprivation of the substantive benefit (the protected property interest) without the process due is an actionable wrong"); Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007) (quoting United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31 (6th Cir. 1992) (per curiam)) (A "'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded."); Enertech Elec., Inc. v. Mahoning County Com'rs, 85 F.3d 257, 260 (6th Cir. 1996) (citing United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir. 1992)) (recognizing a protected property interest in a public contract award if the disappointed bidder can demonstrate (1) that the bidder was awarded the contract and then deprived of it, or (2) that state law granted the governmental entity limited discretion in awarding the contract, which the entity abused); L & H Sanitation, Inc. v. Lake City Sanitation, Inc., 585 F. Supp. 120, 126 (E.D. Ark. 1984) ("[A]n unsuccessful bidder in Arkansas, who is the lowest responsible bidder in full compliance with the bidding procedures, has a limited property interest in the expectation of being awarded the contract."); id. ("The unsuccessful bidder, like any bidder, is entitled to the non-arbitrary exercise by the city of its discretion in making the award."); Brodie v. Connecticut, 401 U.S. 371, 379 (1971) (explaining that an essential element of due process is "that an individual be given opportunity for a hearing before he is deprived of any significant interest"); Pan Bldg., Inc. v. Philadelphia Housing Authority, 1989 WL 8909, at *3-4 (E.D. Pa. 1989) (citing Northern Penna. Legal Services, Inc. v. County of Lackawanna, 513 F. Supp. 678, 682 (W.D. Pa. 1981) ("PHA violated

September 23, 2016 Opinion to support that conclusion, but some specific examples include the following:

(1) With regard to the missing OSHA forms and lack of EMF score, two bases for DRPA deeming Alpha to be "non-responsible," the Court found: "In short, fifty percent of the reason Alpha's bid was rejected was its failure to provide something DRPA did not really care about. It is hard to think of something more arbitrary or capricious." (Docket No. 37 at 15);

(2) "Nothing in the record before the DRPA prior to its final decision to characterize Alpha as non-responsible justified that conclusion and nothing before this Court supports it either. In fact all the evidence is to the contrary." (Id. at 21);

(3) "All of this demonstrates that DRPA's concerted effort to deem Alpha non-responsible was simply an effort to squeeze a square peg in a round hole. No rational person would consider Alpha 'non-responsible.' They were, however, non-responsive. Which begs the obvious question. Why was their bid then, as DRPA's Procurement Manual directs, not rejected on that basis alone?" (Id. at 22);

(4) "[I]f DRPA had applied its rules uniformly and rejected

---

Pan's due process rights by terminating the contract without providing for a hearing.").

9

Alpha's bid as non-responsive it would have been compelled to do the same to Corcon's.  Instead, DRPA appears to have chosen to declare Alpha 'non-responsible,' a rationale that does not withstand even a cursory review much less scrutiny." (Id. at 24);

(5) "If DRPA was permitted to recalculate a bidder's mobilization and clean-up costs, and Corcon's bid was otherwise in compliance with the IFB, why would DRPA have not simply informed all the bidders that Corcon was actually the lowest bidder in mid-June or at least re-set the numbers for everyone to see in the context of the on-going bid review? Doesn't the DRPA, as a public entity, have an obligation to hold the true lowest bidder to its price?

The answer is obvious.  At best, the unexplained delay highlights the bid review process as the black box it represents, obscure and unexplained, and lacking any indicia of transparency or the hallmarks of a deliberative process.  At worst, the delay simply puts the lie to the notion that DRPA believed it had the legal authority to recalculate the bid and exposes the August 9th letter writing exercise as a post-hoc rationalization designed to create the illusion rather than the substance of a proper bid review." (Id. at 30-31.);

(6) "In addition to DRPA's superficial safety and risk assessment and the favored treatment it afforded Corcon, an

10

evaluation of every other aspect of the bid review and award process supports the conclusion that DRPA acted in an arbitrary and capricious manner, [and they are] . . . significant evidence of DRPA's apparent intent to conceal rather than disclose the reasons for its decisions.  Such reticence, otherwise unjustified, makes it more likely than not that the stated reasons for a decision are not the real ones, a particularly egregious form of capriciousness." (Id. at 31);

(7) "DRPA has chosen through their own procedures to leave a void where disclosure of a rational, fair and deliberate process is paramount." (Id. at 35);

(8) "DRPA's procurement manual provides that 'in order to be considered a responsible bidder . . . the bidder/offerer must possess the capability to fully perform the contract requirements in all respects and the integrity and the reliability to assure good faith performance.'  Even after three days of testimony and substantial briefing and argument, the Court is still left to guess who made the decision to deem Alpha incapable of fully performing 'the contract requirements in all respects and the integrity and the reliability to assure good faith performance.'  Even if the decision to find Alpha 'not responsible' was proper under DRPA guidelines, the fact that no one outside of DRPA knows the who, what, where, when, how of that decision is more evidence the decision was arbitrary and an

abuse of discretion." (Id. at 38).

Alpha is therefore entitled to summary judgment in its favor on its due process violation claim.

### 2. Count V – Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV). Where a plaintiff does not allege membership in a class or group, a plaintiff may assert a "class of one" theory – that is, the plaintiff has been intentionally treated differently from other similarly situated persons without a rational basis. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted). To prove a "class of one" equal protection claim, a plaintiff must show: (1) the defendant treated it differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

The Court finds that DRPA treated Alpha differently from Corcon, who was a similarly situated bidder, and DRPA intentionally did so with no rational basis. Again, the Court

refers to the entirety of its September 23, 2016 Opinion to support that conclusion, but some specific examples include the following:

(1) "Alpha Was Treated Differently and Corcon Was Afforded Preferential Treatment . . . [N]ot only did it treat Alpha's bid in an irrational way, . . . DRPA went out of its way to shepherd the Corcon bid through the process." (Docket No. 37 at 24);

(2) "Despite Denying Alpha the Same Opportunity, The DRPA Allowed Corcon to Supplement Its Bid." (Id.);

(3) "DRPA Unilaterally Modified Corcon's Bid In Its Favor." (Id. at 26);

(4) "Even though Jacurak, Ash, and Staszewski testified that they were precluded from communicating directly with bidders, none of these DRPA employees could point to a DRPA rule that disallows such contact, or directs that DRPA staff completely ignore an apparent lowest bidder's inquiries into the status of the contract award process. As we have noted, when they wanted to do so, DRPA had a procedure to communicate to bidders that was transparent and procedurally fair to all. And they used it in this very matter in their effort to lower Corcon's bid." (Id. at 37).

Alpha is therefore entitled to summary judgment in its favor on its equal protection claim.

### 3. Remedies

As noted above, the Court has already provided the remedy of injunctive relief for Alpha's common law arbitrary and capricious claim against DRPA, which is the same relief sought for Alpha's due process and equal protection claims. Alpha also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988 because it has brought its claims under 42 U.S.C. § 1983.

Pursuant to § 1988, in an action brought under § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quotations and citation omitted). "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. at 429 (quotations and citation omitted). "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 559 (2010).

The Court finds that because Alpha prevailed on all of its viable claims against DRPA, Alpha is the prevailing party entitled to a reasonable attorney's fee as part of its overall costs in bringing this litigation. Alpha requests that the

Court enter a briefing schedule for the submission of an affidavit of services and time to allow DRPA to respond so that the Court may determine the amount of the attorney's fee award.

The Court will set forth a briefing schedule regarding Alpha's attorney's fees, but the Court encourages the parties to come to an agreement on the amount of the award based on two considerations. First, "attorney's fees awarded under § 1988 are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based," and are "[i]nstead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services." Perdue, 559 U.S. at 559 (explaining that unjustified enhancements that serve only to enrich attorneys are not consistent with the statute).

Second, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." Hensley, 461 at 436. The Supreme Court in Hensley "endorsed the 'lodestar calculation' method as the starting point, for which the District Court should first calculate the lodestar amount by multiplying an

amount of hours the court deems reasonable by a reasonable hourly rate." Eichenlaub v. Township of Indiana, 214 F. App'x 218, 222 (3d Cir. 2007) (citing Hensley, 461 at 437). "There is a strong presumption that the 'lodestar' amount is reasonable." Id. (citing Blum v. Stenson, 465 U.S. 886, 888 (1984)).

Thus, the Court strongly suggests that the parties submit a jointly approved fees and costs petition for the Court's consideration, because additional litigation on the amount of the attorney's fee award, and correspondingly more fees and costs incurred by both sides, will exacerbate the concern of unreasonably depleting public funds, particularly when it is a foregone conclusion that Alpha will be entitled to full compensation so long as Alpha's fee request is consistent with the lodestar calculation.[3]

## CONCLUSION

For the foregoing reasons, Alpha's motion for summary judgment on its due process and equal protection claims will be granted. Within 10 days, Alpha shall file its affidavit of services in support of its attorney's fees and costs award, and 10 days thereafter, DRPA shall file its response, unless the

---

[3] See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

parties otherwise inform the Court that they have agreed on a joint attorney's fees and costs award.

An appropriate Order will be entered.

Date: June 26, 2019            s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.